UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JEFFREY L. BARTON,

                Plaintiff,

-vs-                            Case No.  6:06-cv-133-Orl-JGG

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____

## MEMORANDUM OF DECISION

      Plaintiff Jeffrey L. Barton ["Barton"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying his application for a period of disability and disability insurance benefits.  *See* Docket No. 1 (complaint).  For the reasons set forth below, the Commissioner's decision is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    PROCEDURAL HISTORY

      On August 6, 2002, Barton filed a claim for disability insurance benefits, claiming disability as of July 20, 2002 due to degenerative disc disease; spondylosis of the cervical and lumbar spine; hypertension; obesity; and pain, numbness, and tingling in his hands, arms, feet, legs, back, and neck. R. 14, 54-56, 64.  His claim was denied initially, and upon reconsideration.  R. 42, 45.  Barton is insured for disability benefits through September 30, 2004.  R. 51-52.  On August 25, 2004, the Honorable R. Neil Lewis, Administrative Law Judge ["ALJ"], held a twenty-five-minute hearing on Barton's claim in Orlando, Florida.  R. 328- 47.  Attorney Eric L. Bolves represented Barton at the

hearing.  R. 328.  The ALJ heard testimony from Barton, Cheryl Barton (Barton's wife), and Walter Todorowski, an impartial vocational expert.  R. 329.

On November 23, 2006, the ALJ issued a decision that Barton was not disabled and not entitled to benefits.  R. 13-20.  Following a review of the medical and other record evidence, the ALJ found that Barton could not perform his past relevant work as a pesticide spray technician, landscaper, and maintenance worker.  R. 14, 20, Finding 8.  The ALJ found that Barton nevertheless retained the residual functional capacity ["RFC"] to: lift and carry five pounds frequently and ten pounds occasionally; stand or walk for two hours in an eight-hour workday; and sit for a total of six hours per eight-hour workday with "normal breaks."  R. 19, Finding 7.  In addition, the ALJ found that Barton required the option to alternate between sitting and standing at will; had to avoid all overhead work and climbing stairs; avoid more than occasional reaching, handling, fingering, bending, kneeling, or squatting; and only perform "simple, repetitive tasks."  R. 19-20, Finding 7.  Based on testimony from the vocational expert, and using the Medical-Vocational Guidelines as a "framework for decision-making," the ALJ concluded that Barton was not disabled.  R. 20, Finding 12.

After considering additional medical records, R. 311-27, the Appeals Council denied review. R. 5-8.  On January 30, 2006, Barton timely appealed the Appeals Council's decision to the United States District Court.  Docket No. 1 at 1, ¶ 7.  On July 6, 2007, Barton filed in this Court a memorandum of law in support of his appeal.  Docket No. 12.  On February 23, 2007, the Commissioner filed a memorandum in support of her decision that Barton was not disabled.  Docket No. 21.  The appeal is ripe for determination.

## II.   THE PARTIES' POSITIONS

Barton assigns four errors to the Commissioner.  First, Barton claims that the Commissioner erred by failing to consider and weigh the opinions of Dr. Vrajlal L. Rajyaguru, Barton's treating physician.  Docket No. 12 at 8-10.  Second, Barton claims that the Commissioner erred by improperly rejecting the opinions of Dr. Gordon J. Rafool, also Barton's treating physician.  *Id.* at 11-14.  Third, Barton claims that the Commissioner erred by failing to consider and weigh all of the opinions of Dr. Shanti Singh, a consultative examiner.  *Id.* at 14-16.  Fourth, Barton claims that the ALJ's RFC finding is not based on substantial evidence.  *Id.* at 16-18.

The Commissioner argues that substantial evidence supports her decision to deny disability.  First, the Commissioner argues that despite the ALJ's failure to mention Dr. Rajyaguru in the written decision, the ALJ included in his findings many of the same restrictions stated by Dr. Rajyaguru.  Docket No. 13 at 4-7.  The Commissioner also argues that the record does not support all of Dr. Rajyaguru's opinions and findings.  *Id.* at 7.  Second, the Commissioner argues that the ALJ properly discounted Dr. Rafool's opinions.  *Id.* at 8-10.  Third, the Commissioner argues that the ALJ properly summarized, and therefore properly weighed, Dr. Singh's opinions.  *Id.* at 10.  Fourth, the Commissioner counters that the record is "devoid of any evidence which substantiates [Barton's] allegations that he was totally disabled."  *Id.* at 12.

## III.   THE STANDARD OF REVIEW

### A.   AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than

merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

## B.     REVERSAL

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v.*

*Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).  A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

### C.    REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).  To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ

to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 - 92;  *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at 1095.  With a

sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[1] *Id.*

**D.   STANDARD OF REVIEW WHERE APPEALS COUNCIL CONSIDERS NEW EVIDENCE**

After the ALJ's decision — but before the Appeals Council decision — Barton submitted additional medical records covering the period from November 10, 2004 through September 6, 2005. R. 314-27. If a claimant submits evidence that does not relate to the relevant period under consideration, "the Appeals Council will return the additional evidence to [the claimant] with an explanation as to why it did not accept the additional evidence and will advise [the claimant] of [his or her] right to file a new application." 20 C.F.R. § 404.976(b)(1)(2005). The Appeals Council did not return the additional evidence to the claimant. Rather, the Appeals Council properly made the evidence a part of the record, and also considered the evidence in denying review. R. 5, 8. The district court also must consider the new evidence in determining whether the Commissioner erred in denying review of the ALJ's decision.

Congress left the term "final decision" undefined in 42 U.S.C. § 405(g). Where a claimant exhausts his administrative remedies by requesting review by the Appeals Council and the Appeals Council then denies review,  the Appeals Council's order denying review is a "final decision" of the

_____

[1]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits. *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

Commissioner under § 405(g). *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 2083 (2000); *accord*, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Williams v. Comm'r of Soc. Sec.*, 407 F. Supp. 2d 1297, 1302-03 (M.D. Fla. 2005) (Appeals Council's denial is a final decision of the Commissioner that is subject to judicial review under section 405(g)).   The Appeals Council "will" review a case if there appears to be an abuse of discretion by the ALJ, if there is an error of law, or if the ALJ's action, findings, or conclusions are not supported by substantial evidence.  20 C.F.R. § 416.1470; *Sims*, 120 S.Ct. at 2086; *see also, Parker v. Bowen*, 788 F.2d 1512, 1518 (11th Cir. 1986) (en banc).  The Appeals Council's denial of review is subject to judicial review to determine if it is supported by substantial evidence. *Sims*, 120 S.Ct. at 2086.

Just as the ALJ has a duty to investigate the facts and to develop the arguments both for and against the granting of benefits, the Appeals Council's  review is similarly broad.  *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 2085 (2000).  The Appeals Council, not the claimant, has the primary responsibility for identifying and developing the issues. *Sims*, 120 S.Ct. at 2086.  When the Appeals Council refuses to consider new evidence submitted to it and denies review, the Appeals Council's decision denying review is subject to judicial review.  20 C.F.R. §§ 404.970(b); 416.1470(b); *Sims*, 120 S.Ct. at 2086;  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Furthermore, the Appeals Council commits reversible error when it refuses to consider new evidence and then denies review.  *Keeton*, 21 F.3d at 1066.  Similarly, it is *reversible error* for a district court to consider only the evidence presented to the ALJ — and to ignore the new evidence presented to the Appeals Council — in reviewing a decision of the Appeals Council. *Keeton*, 21 F.3d at 1066.

The Appeals Council must consider and evaluate new evidence to determine whether there is a basis for changing the ALJ's decision. *Sims*, 120 S.Ct. at 2086; *Falge v. Apfel*, 150 F.3d 1320, 1322 n. 4 (11th Cir. 1998). When the Appeals Council has denied review, the district court looks only to the evidence actually presented to the ALJ in determining whether the *ALJ's decision* is supported by substantial evidence. *Falge*, 150 F.3d at 1323; *accord, Eads v. Sec'y of Health and Human Services*, 983 F.2d 815, 817 (7th Cir. 1993) (ALJ cannot be faulted for failure to weigh evidence never presented to him). Nevertheless, there is an important difference between *Falge* and this case — a difference stressed by the United States Court of Appeals for the Eleventh Circuit. In *Falge*, the claimant did not appeal the Appeals Council's decision to deny review. Instead he appealed only the *ALJ's decision* to deny benefits. 150 F.3d at 1324. Although the complaint in this case could have done so more clearly, the claimant appeals from and seeks a reversal of the Appeals Council's decision to deny review. Docket No. 1 at 1-2, ¶¶ 6-7. The Eleventh Circuit directs the district courts to consider evidence submitted to the Appeals Council in reviewing the Appeals Council's denial of review. *Falge*, 150 F.3d at 1324; *Keeton*, 21 F.3d at 1066; *accord, Higgenbotham v. Barnhart*, 405 F.3d 332, 337-38 (5th Cir. 2005); *Williams*, 407 F. Supp. 2d at 1303.

Indeed, it makes sense that Congress has provided for judicial review of the Commissioner's final decision — the last step of review necessary to exhaust administrative remedies. When the Appeals Council refuses to consider new evidence submitted to it, the Appeals Council's decision denying review is subject to judicial review for error. *Sims*, 120 S.Ct. at 2086; *Keeton*, 21 F.3d at 1066. Similarly, when the Appeals Council denies review of an ALJ's decision after receiving, considering, and evaluating new and material evidence that clearly and thoroughly undermines the

-9-

ALJ's findings of fact and conclusions of law, the Appeals Council's decision denying review also must be subject to judicial review for error. *See Falge*, 150 F.3d at 1324; *Keeton*, 21 F.3d at 1066, 1068; 20 C.F.R. § 404.970(b) (Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the relevant period, and it will then review the case if it finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record). The Commissioner cannot avoid judicial review of the Appeals Council's decision to deny review by considering but not acting on new evidence that is highly probative of disability, or by considering but not acting on evidence that shows in retrospect that an ALJ's action, findings, or conclusion are contrary to the weight of the evidence currently of record.

   In this case, the claimant has appealed an unfavorable decision to the Appeals Council as a necessary step in exhausting administrative remedies. The Appeals Council has considered claimant's additional evidence in light of the issues raised in the request for review, has considered the applicable statutes and regulations, has considered the ALJ's decision, and has issued a written final decision determining that the ALJ neither erred nor abused his discretion, and determining that the ALJ's findings are supported by substantial evidence. The Appeals Council's determination is subject to judicial review. The Commissioner cannot avoid judicial review of the Appeals Council's final decision by passing a regulation defining the term "final decision of the Commissioner of Social Security" in 42 U.S.C. § 405(g) as the decision of the ALJ, and by calling the Appeals Council's final decision a "denial of review." *See Sims*, 120 S.Ct. at 2086; *accord, Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (Appeals Council's denial of review was a judicially reviewable final decision under 42 U.S.C. § 405(g)); *Williams*, 407 F. Supp. 2d at 1302-03.

-10-

IV.   **THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

A.   **DEVELOPING THE RECORD**

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C. § 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at 735 - 36.

Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).  This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Cowart*, 662 F.2d at 735 (citations omitted).

-11-

### B.      THE FIVE STEP EVALUATION

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his or her residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then claimant is disabled.  20 C.F.R. § 404.1520(f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588 - 89 (11th Cir. 1987); *Davis*, 985

-12-

F.2d at 534. A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Commissioner*, 265 F.2d 1214, 1219 (11th Cir. 2001).

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). In this step, the ALJ assesses the claimant's residual functional capacity ["RFC"]. This assessment measures whether a claimant can perform past relevant work despite his or her impairment. 20 C.F.C. § 404.1520 (f); *see also, Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.C. § 404.1545(b).

The ALJ first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant. *See* SSR 82-61. If so, the claimant is not disabled. If not, the ALJ then considers whether the claimant can perform the functional demands of the job as it is generally performed in the national economy. SSR 82-61. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.C. § 404.1567.

The claimant must prove disability on or before the last day of his or her insured status for the purposes of disability benefits. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416(i)(3); 423(a), (c). If a claimant becomes disabled after losing insured status, the claim for disability benefits must be denied despite

-13-

the claimant's disability. *See, e.g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

### C.    OTHER WORK

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). Exclusive reliance is not appropriate, however, "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also, MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations

are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert).

It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

### D.    TREATING PHYSICIANS

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991);  *Sabo v. Commissioner of Social Security*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the

accuracy of his findings and statements).  Similarly, the ALJ may reject any medical opinion if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also,* 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or

the application of vocational factors because those ultimate determinations are for the Commissioner. 20 C.F.R. § 404.1527(e).

The ALJ must, however, state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

### E.    PAIN

Pain is a non-exertional impairment. *Foote*, 67 F.3d at 1559; 826 F.2d at 1003. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1529. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*,

-17-

957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### F.    CREDIBILITY

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

### G.   MEDICAL TESTS AND EXAMINATIONS

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also, Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error).  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  20 C.F.R. § 416.917 (1998).

## V.   APPLICATION AND ANALYSIS

### A.   THE FACTS

Barton was born on October 10, 1955, and was forty-eight years old on the date of the hearing before the ALJ.  R. 54, 330.  Barton completed high school, and has past work experience as a pesticide spray technician, a landscaper, and a maintenance worker.  R. 70, 330-31.  Barton claims disability as of July 20, 2002 due to degenerative disc disease; spondylosis of the cervical and lumbar spine; hypertension; obesity; and pain, numbness, and tingling in his hands, arms, feet, legs, back, and neck. R. 14, 54-56, 64.  Barton is insured for disability benefits through September 30, 2004.  R. 51-52.

In April 2001, while Barton was still working, he sought treatment for neck pain and paresthesias in his arms and legs.  R. 138-40.  Barton reported a history of neck problems since a

-19-

motor vehicle accident when he was three years-old.  R. 138-39.  At the advice of his doctors, R. 140, 160-63, Barton underwent a C3-4 cervical diskectomy and fusion for a herniated disk on May 29, 2001.  R. 158.  Max B. Medary, M.D., performed the surgery, and reported improvement and no significant problems after the procedure and during subsequent follow-up visits.  R. 152-59.  Barton continued to complain of neck pain, although x-rays and MRI's of the cervical and lumbar spine showed minimal degenerative changes.  R. 152-54.

Dr. Medary referred Barton for pain management with Vrajlal L. Rajyaguru, M.D, of the Advanced Pain Clinic, PA.  R. 273.  On May 17, 2002, Dr. Rajyaguru evaluated Barton for pain in his back, neck, left shoulder, and legs; pain and numbness in his arms; and headaches.  R. 273-76.  Dr. Rajyaguru's examination revealed neck and facetal joint tenderness and diminished range of motion of the cervical spinal.  R. 274-75.  Reverse straight leg raise and Phasent's tests indicated lower back pain.  R. 275.  Dr. Rajyaguru assessed cervical facet syndrome, cervical radiculopathy, lumbar facet syndrome, myofascial pain syndrome, occipital neuralgia, left shoulder bursitis and bicipital tendinitis. *Id.*  The doctor recommended home exercise, therapy, and medication.  R. 275-76.

On May 21, 2002, upon referral from Dr. Rajyaguru, neurologist Lisa Banchik, M.D., conducted upper extremity motor nerve and sensory nerve studies.  R. 270-72.  The tests showed bilateral median nerve entrapment at the wrists (which was worse on Barton's left side) with severe sensory involvement bilaterally.  R 272.  The results further demonstrated bilateral ulnar nerve sensory neuropathy and left median nerve neuropathy above the elbow.  *Id.*  Barton visited Dr. Rajyaguru regularly, sometimes once a month or more, for treatment of his pain.  R. 215-69.  Dr. Rajyaguru generally recommended conservative treatment, such as home exercise and therapy, application of

-20-

moist heat, and medications, but also treated Barton with injections and H-wave therapy. *See, e.g.*, R. 216, 241, 250, 269.

Barton claims disability as of July 20, 2002. R. 54-56. On September 24, 2002, in addition to his prior findings, Dr. Rajyaguru noted decreased sensation in Barton's legs and decreased range of motion in the lumbar spine. R. 263. Dr. Rajyaguru diagnosed lumbar facet syndrome, lumbar radiculopathy, myofacial pain syndrome, cervical facet syndrome, cervical radioculopathy, neuropathic pain of the lower extremity, and sacroliatis. *Id.*

On September 27, 2002, Barton underwent a motor and sensory nerve study of his lower extremities. R. 260-62. The test revealed left tibial and left peroneal nerve neuropathy. R. 261. On October 8, 2002, Barton saw Dr. Rajyaguru who stated similar findings and recommendations as in his previous visits. *See* R. 258-59. During this visit, Dr. Rajyaguru also reviewed an MRI of Barton's lumbar spine which showed disc protrusions at L3-4 and L5-S1. R. 259. On October 22 and 29 and November 12, 2002, Dr. Rajyaguru treated Barton with left L5-S1 nerve root injections, as well as left sacroiliac joint injections. R 249-57.

On December 30, 2002, at the request of the Office of Disability Determinations, Dr. Shanti Singh, M.D., examined Barton. R. 171-73. Muscle strength was 5/5 in the upper and lower extremities; grip strength was intact; sensation was decreased in the right lower extremity compared with the left. R. 173. Dr. Singh diagnosed chronic pain syndrome secondary to degenerative disc disease of the spine, chronic lumbar radiculopathy, and cervical radiculopathy. *Id.* In his "Functional Assessment/Medical Source Statement," Dr. Singh opined:

> [B]ased on the evaluation today Mr. Barton would have trouble holding a regular eight hour job. In view of his history of chronic pain, limited range of motion in his neck

a well as lower extremities, chronic pain requiring narcotic use.  He has apparent difficulty ambulating.  He does walk with a limp in the right lower extremity as a result of pain he is expected to have trouble sitting for an eight hour work day even with normal breaks.  He would be limited in lifting less than 10-20 lbs in terms of what he can lift and carry, bending, stooping and crouching would also be limited as a result of his chronic lower back pain.  There appears to be no limitations in handling, feeling, grasping or fingering.

*Id.*

On December 9, 2002, Barton was admitted to the Osceola Regional Medical Center due to chest pain.  R 175-89.  He reported that over the past three to four days, he experienced pain lasting a few seconds several times a day.  R. 175.  The hospital doctor assessed chest pain with multiple risk factors, including family history, tobacco abuse, weight, and lipid values.  R. 188.  The doctor recommended that Barton use a proton pump inhibitor for probable gastritis, cessation of smoking, and a mild exercise program.  *Id.*  The hospital discharged Barton on December 11, 2002.

Dr. Rajyaguru treated Barton with H-wave therapy on his neck and lower back six times in January 2003.  R. 239-48.  He then saw Barton approximately once a month from June through December 2003, refilling Barton's prescription for Methadone, and recommending conservative treatment, such as home exercise and therapy, application of moist heat, and medications.  R. 221-34.

Dr. Rajyaguru completed a Physical Residual Functional Capacity Questionnaire, which is undated but shows a facsimile transmission date of June 30, 2004 to "The Legal Centre."[2]  R 235-38. In the Questionnaire, Dr. Rajyaguru stated that he saw Barton once a month, and that his prognosis was "fair."  R. 235.  The doctor listed Barton's symptoms as neck and back pain and headaches, and

---

[2]The January 15, 2003 attorney's fees agreement between Barton and Bolves, the attorney who represented Barton at the ALJ hearing, shows that Bolves' law office, Bolves & Associates, P.A., has a website of "TheLegalCenter.com." R. 28.

opined that Barton was not a malingerer. R. 235-36. The doctor opined that the Barton's pain seldom interfered with his attention and concentration, and that Barton could tolerate moderate stress. R. 236. He further opined that Barton could sit for two hours and stand for fifteen minutes at one time; stand and/or walk for less than two hours total; and sit for two hours total in an eight-hour workday. R. 237.

Dr. Rajyaguru also stated that Barton required the option of shifting positions at will from sitting, standing, or walking, and needed to take "unscheduled breaks" once an hour during an eight-hour day. *Id.* Barton could lift and carry ten to twenty pounds frequently and fifty pounds rarely; twist, stoop, and climb stairs occasionally; and crouch and climb ladders rarely. R. 237-38. Dr. Rajyaguru opined that Barton's impairments would be likely to produce "good days" and "bad days," and that Barton would likely be absent from work more than four days per month. R. 238. The doctor also recommended that Barton undergo a psychological evaluation. *Id.*

In a letter "To Whom It May Concern" dated February 25, 2004, Dr. Gordon Rafool of the Gessler Clinic, P.A., stated that Barton was "unable to work" and that "[i]f any further information is needed, feel free to contact [Dr. Rafool]." R. 283. Barton did not submit records of treatment by Dr. Rafool prior to February 25, 2004, although he did submit laboratory tests, x-rays, and an MRI from February 9 through February 19, 2004 that were ordered by Dr. Rafool.[3] R. 284-91. A February 9, 2004 x-ray of the lumbar spine showed mild spondylosis of the lumbar spine. R. 286. An MRI of the cervical spine dated February 19, 2004 is mostly unremarkable, showing a mild disc bulge at C-4-

---

[3]Barton also submitted a letter dated July 7, 1994 from Roberto B. Bellegarrigue, M.D. to Dr. Rafool, in which Dr. Bellegarrigue thanks Dr. Rafool for referring Barton to him for a neurological examination. R. 300-02. The letter pre-dates Barton's alleged onset date by eight years.

5, C5-6, and C6-7.  R. 284-85.  An MRI of the cervical spine from the same date also revealed  mild disc bulge at C-4-5, C5-6, and C6-7.  R. 304.

Upon referral from Dr. Rafool, neurologist John C. Amann, M.D., examined Barton on March 17, 2004.  R 292-93B.  Dr. Amann noted that Barton's gait was "slightly spastic," and that the range of motion in his cervical spine was "greatly diminished."  R. 293.  Barton also had limited range of motion of the lumbar spine.  *Id.*  Dr. Amann assessed cervical spondylosis, cervical degenerative disc disease, lumbar spondylosis, lumbar degenerative disc disease.  R. 293A.  The doctor ruled out lumbar radiculopathy and cervical radiculopathy.  *Id.*  He recommended that Barton receive epidural steroid injections in the cervical spine, and otherwise continue his pain management with Dr. Rajyaguru.  He also referred Barton for physical therapy with therapeutic massage.  R. 293B.

An MRI of Barton's lumbar spine dated April 1, 2004 revealed abnormal results.  R. 209.  The results showed degenerative changes that were most significant at L3-L4, and which resulted in "severe central canal stenosis with associated mild inferior foraminal stenosis bilaterally."  R 309.  An x-ray of Barton's lumbar spine dated April 1, 2004 showed "[m]ild to moderate degenerative changes in the lower facts," but otherwise revealed normal results.  R. 295.

Barton returned to Dr. Rajyaguru on April 16, 2004 with continued complaints of pain.  R. 298.  Dr. Rajyaguru prescribed medication, and recommended home exercise and therapy and application of moist heat.  R. 299.

On May 11, 2004, Dr. Rafool completed a Lumbar Spine Residual Functional Capacity Questionnaire.  R. 277-82.  Dr. Rafool stated that he treated Barton between February 9 and February 23, 2004.  R. 277.  The doctor diagnosed cervical spondylosis, cervical degenerative disc disease,

-24-

lumbar spondylosis, and lumbar degenerative disc disease.  *Id.*  Dr. Rafool also stated that Barton had

a "gait problem," discomfort at L1-S1, and chronic pain; and that Barton could not sit "for any length

of time without [Barton's] legs going numb." *Id.*  The doctor also stated that Barton had "chronic loss

of function" in his legs, back, and neck, and diminished range of motion of his cervical and lumbar

spine due to pain.  *Id.*

      Dr. Rafool opined the Barton was not a malingerer; that Barton's pain was frequently severe

enough to interfere with his attention and concentration span; and that Barton's prognosis was

"fair/poor."  R. 278-79.  He further opined that Barton could sit or stand for fifteen minutes at one

time; and sit, stand, and/or walk for less than two hours total in an eight- hour workday, reiterating that

Barton was unable to sit for "any length of time without legs becoming numb." R 279.  According

to Dr. Rafool, Barton was required to walk every ten minutes for five minutes at a time during an

eight-hour workday; and required a job that permitted him to shift positions at will from sitting,

standing, or walking and to take unscheduled breaks. R. 280.  In addition, Barton could lift and carry

less than ten pounds rarely; and never lift over ten pounds, twist, stoop, crouch, or climb. R. 281.  Dr.

Rafool also opined that Barton was significantly limited in performing repetitive reaching, handling

or fingering, and that Barton's impairments were likely to produce "good days" and "bad days." *Id.*

On the last page of the Questionnaire, Dr. Rafool wrote "unable to work." R. 282.

      Barton visited Dr. Rajyaguru on July 2, 2004. R. 296-97.  Dr. Rajyaguru noted that the drug

Kadian "did not work/caused side effects," and advised Barton to stop using the medication. R. 296.

He continued to prescribe therapy, exercise, and application of moist heat. R. 297.

In a brief treatment note dated July 8, 2004, Dr. Rafool noted that he told Barton to "diet more [and] walk more."  R. 294.  Dr. Rafool also prescribed medication, and scheduled a follow-up appointment in two weeks.  *Id.*

   1. <u>Testimony at the ALJ Hearing</u>

On August 25, 2004, Barton testified at the hearing before the ALJ.  R. 330-43.  Barton testified that he experiences headaches and dizziness, as well as pain in his neck, shoulders, arms, and back.  R. 333-36.  He also described sometimes feeling numbness or tingling in his legs, and stated that he experiences mood swings as a side effect of his medications.  R. 336-37.  Barton's wife also testified that Barton cannot lift "anything that has any weight to it."  R. 344.

The ALJ heard testimony from the VE.  R. 345-47.  The ALJ asked the VE whether a person of Barton's age, experience, and RFC could perform his past relevant work.  R. 345.  The ALJ described the RFC as "sedentary" with the following limitations — the person required a "sit stand option"; could not perform any "overhead work"; was limited to "simple, noncomplex tasks"; could not do repeated reaching, handling, fingering, stair climbing, repetitive bending, kneeling, squatting, or crawling.  *Id.*  The VE responded that the person would not be able to perform Barton's past relevant work, but that he would be able to perform the sedentary unskilled and semiskilled jobs of surveillance system monitor, information clerk, and order clerk.  R. 345-46.

Upon cross-examination by Barton's attorney, the VE testified that, if the hypothetical person were absent from work one day per month, he would "call attention" to himself and would "have a problem."  R. 346.  The VE also testified that, if the person were absent once a month for several months consecutively, "it would be a problem."  *Id.*  Barton's attorney then directed the VE's attention

-26-

to the Physical Residual Functional Capacity Questionnaire in which Dr. Rajyaguru opined that Barton would be absent from work on average more than four days per month. R. 346; *see also* R. 238. The VE testified that absences of four days a month "would not be tolerable[ ] in a work environment." R. 346.

### 2.   Appeals Council Evidence

After the ALJ's decision and before the Appeals Council decision, Barton submitted Dr. Rajyaguru's treatment notes covering the period from November 10, 2004 through September 6, 2005. R. 314-27. Thus, after the ALJ hearing and after Barton's insured status had expired in September 2004, Barton continued to see Dr. Rajyaguru for his pain, although during some of these visits, Barton reported "good relief in his pain from the medications and the home exercise." *See, e.g.*, R. 315, 317. Nonetheless, Barton still complained of pain, tingling, and numbness. R. 315, 317, 319, 322, 324, 326. Dr. Rajyaguru continued to recommend conservative therapy, including medication, application of moist heat, and home exercise and therapy. R. 316, 318, 323, 325, 327. On February 15, 2005, however, Dr. Rajyaguru recommended an additional procedure – a lumbar rhizotomy – to treat Barton's pain. R 319-20.

### B.   THE ANALYSIS

### 1.   Dr. Vrajlal L. Rajyaguru

Barton first argues that the Commissioner erred by failing to consider and weigh the opinions of Dr. Rajyaguru, Barton's treating physician, as expressed in the undated Physical Residual Functional Capacity Questionnaire. Docket No. 12 at 8-10. The Commissioner counters by calling Barton's argument "misguided" because — despite the ALJ's failure to mention Dr. Rajyaguru —

the ALJ did generally include in Barton's RFC impairments similar to those stated by Dr. Rajyaguru. Docket No. 13 at 4-7. The Commissioner also argues (somewhat confusingly) that Dr. Rajyaguru's opinions are not supported by the evidence, and therefore "good cause" supports rejection of the treating physician's opinions.

The Commissioner's arguments are without merit. First, Dr. Rajyaguru imposed more restrictions than the ALJ stated in his RFC finding. The ALJ found that Barton retained the RFC to lift and carry five pounds frequently and ten pounds occasionally; stand or walk for two hours per eight-hour workday; and sit for a total of six hours in an eight-hour workday with normal breaks. R. 19, Finding 7. The ALJ also found that Barton required the option to alternate between sitting and standing at will; had to avoid all overhead work and climbing of stairs; avoid more than occasional reaching, handling, fingering, bending, kneeling, or squatting; and only perform "simple, repetitive tasks." R. 19-20, Finding 7.

In the Questionnaire, however, Dr. Rajyaguru opined that Barton could sit for only two hours *total* in an eight-hour workday, and that Barton required not just a sit or stand option, but also the option to shift positions "at will" from sitting, standing, or walking. R. 237. He further opined that Barton had to take "unscheduled breaks" once an hour, and that Barton would likely be absent from work an average of four days a month. R. 237-38.

In his decision, the ALJ never mentioned Dr. Rajyaguru's Questionnaire or any of the treating physician's opinions. The ALJ, in fact, failed to mention Dr. Rajyaguru by name at all, and included only a brief summary of portions of "[p]rogress notes from [Barton's] pain management clinic." R. 15. It is true that Dr. Rajyaguru mainly treated Barton conservatively, but there is no indication that

-28-

the ALJ ever considered or weighed the treating physician's opinions. Dr. Rajyaguru treated Barton regularly, often once a month, during the relevant two-year period. The ALJ failed to state good cause for rejecting the treating physician's opinions, and remand is required on this issue.

2.   Dr. Gordon J. Rafool

Barton next claims that the Commissioner erred by improperly rejecting the opinions of Dr. Gordon J. Rafool, also Barton's treating physician. Docket No. 12 at 11-14. Barton notes that the ALJ misstated the date of Dr. Rafool's February 2004 letter (in which Dr. Rafool stated that Barton was unable to work). *Id.* Barton also argues that in rejecting Dr. Rafool's May 2004 RFC assessment, the ALJ pointed to evidence that did not clearly contradict Dr. Rafool's opinions. *Id.* at 12-13. The Commissioner counters that despite "some confusion regarding which physician was credited with the medical finding," the ALJ properly rejected Dr. Rafool's opinions. *Id.* at 10. The Commissioner argues (again, somewhat confusingly) that because Dr. Rafool's RFC assessment was more restrictive than Dr. Rajyaguru's (which the ALJ never mentioned, as discussed above), the ALJ properly discounted Dr. Rafool's assessment. *Id.* at 8-9.

The ALJ misstated the date of Dr. Rafool's letter (and cited to the wrong exhibit),[4] but overall, the ALJ accurately summarized Dr. Rafool's opinions and findings. In rejecting Dr. Rafool's opinions, the ALJ noted that Dr. Rafool's letter stated "without analysis or rationale" that Barton was incapable of working, and that "[n]o specific duration was stated." R. 16. The ALJ further rejected Dr. Rafool's RFC assessment because it contradicted some of the other doctors' physical examinations

---

[4]In the summary of the evidence, the ALJ stated that Dr. Rafool wrote a "note in February 2002, indicating without explanation that [Barton] was unable to work." R. 15. The ALJ cited to "Exhibit 13F." *Id.* Dr. Rafool's letter, however, is dated February 25, 2004, and is marked as page seven of Exhibit 12R. R. 283. The ALJ also described Dr. Rafool's May 2004 RFC evaluation, and again, cited to "Exhibit 13F." R. 15. Dr. Rafool's May 11, 2004 Lumbar Spine Residual Functional Capacity Questionnaire is marked as page 1 of Exhibit 12R. 277-82.

-29-

and the objective findings on the MRI's and x-rays. *Id.* Ordinarily, the Court might find that the ALJ's error as to the dates and as to the citations to Dr. Rafool's records were harmless error. But in light of the ALJ's failure to consider and weigh other physicians' opinions (discussed above and below), the Court need not determine harmlessness. On remand, the Commissioner is free to reconsider and weigh the opinions of Dr. Rafool.

> 3.     Dr. Shanti Singh

Barton also claims that the Commissioner erred by failing to consider and weigh all of the opinions of Dr. Singh, the consultative examiner. Docket No. 12 at 14-16. The Commissioner calls Barton's claim "simply untrue," and cites to the third page of the ALJ's decision (at R. 15) to show that the ALJ properly summarized, and therefore properly weighed, Dr. Singh's opinions. *See* Docket No. 15 at 10.

The Commissioner's argument, however, is without merit. The ALJ stated a brief summary of *portions* of Dr. Singh's consultative examination notes, noting Barton's weight, height, blood pressure, and extremity strength. *See* R. 15. The ALJ then stated that "Dr. Singh concluded that Barton was capable of lifting ten to 20 pounds and of limited bending, stooping or crouching." *Id.* Dr. Singh, in fact, opined that Barton "would be limited in lifting less than 10-20 lbs." R. 173. The ALJ also failed to mention Dr. Singh's opinions that Barton "would have trouble holding a regular eight hour job" and that Barton "is expected to have trouble sitting for an eight hour work day even with normal breaks." *See id.* Again, there is no indication that the ALJ ever considered or weighed Dr. Singh's opinions.

4.   Substantial Evidence

Finally, Barton argues that the ALJ's RFC finding is not based on substantial evidence. Docket No. 12 at 14-16.  The Commissioner counters that the record is "devoid of any evidence which substantiates [Barton's] allegations that he was totally disabled."  Docket No. 13 at 12.

A treating physician and a consultative examiner opined as to Barton's impairments and restrictions on his ability to work, and the ALJ mostly failed to consider and weigh these opinions. Without stating with particularity the weight assigned to the various physicians' opinions, as discussed above, the Court cannot determine whether the ALJ's decision (including the RFC finding and whether the hypothetical posed to the VE accurately captures Barton's impairments) is based on substantial evidence.

**VI.   CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **REMANDED** pursuant to sentence four of 42 U.S.C. 405 (g).  The Clerk should enter a judgment and close the case.

**DONE AND ORDERED** this 28th day of February, 2007.

_____
JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to
All Counsel of Record and *Pro Se* Litigants,
and to:

-31-

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL                33602

The Honorable R. Neil Lewis
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL                32817